UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | | |
|---|---|---|
| **EMERGENCY STAFFING SOLUTIONS, INC.** | * * * | **CIVIL ACTION NO. 3:10-CV-00157** |
| Plaintiff | * * | |
| VERSUS | * * | **JUDGE ROBERT G. JAMES** |
| **MOREHOUSE PARISH HOSPITAL SERVICE DISTRICT NO. 1 d/b/a MOREHOUSE GENERAL HOSPITAL** | * * * * | **MAG. JUDGE KAREN L. HAYES** |
| Defendant | * * | |

### MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

**MAY IT PLEASE THE COURT:**

**I.    STATEMENT OF THE CASE:**

This action arises out of a breach of contract claim asserted by Emergency Staffing Solutions, Inc. ("ESS"). For reasons more fully explained below, Morehouse General is entitled to summary judgment as a matter of law.

In the Complaint, plaintiff correctly alleges that "[o]n July 1, 2007, ESS and the Hospital entered into a Hospitalist and Emergency Department Services Agreement ("Agreement"). . ." **Exhibit A.** Section 10(A) of the Agreement provides:

> 10.    Restrictive Covenant.
>
> > A. In recognition that ESS expends substantial resources and efforts to make qualified physicians available to serve as Providers, Hospital agrees that, during the Term of this Agreement including any extensions thereof, and for a period of 12 months after the termination or expiration of this Agreement regardless of cause, Hospital will not directly or indirectly

4

> (including, without limitation, through a controlled affiliate) solicit, retain, employ, contract with or otherwise engage or be the beneficiary of the professional services of any Provider who (a) was presented to Hospital by ESS as a prospective Provider within a six month period prior to date of termination or expiration of this Agreement, or (b) provided either administrative or medical services to satisfy ESS' obligations under this Agreement at Hospital. In addition, Hospital agrees that it will not induce, persuade, or attempt to persuade any Emergency Physician or prospective Emergency Physician to refuse to provide services or terminate his or her relationship with ESS, its agents or affiliates. Any current physicians working in the Hospital do not apply to this Restrictive Covenant. Notwithstanding the provisions of Section 10(A), ESS may, in its sole discretion, elect to waive the provisions of Section 10(A) for any Emergency Physician subject to such provision; provided however, that ESS shall be compensated for each such Emergency Physician in the amount of Fifty Thousand Dollars ($50,000).

**Exhibit A.** ESS asserts that it provided Morehouse General with at least four (4) Emergency Physicians (namely, Lorrie Metzler, Patrick Grayson, Dale R. Maddox, and Gbolahan Sokoya) who were covered by Section 10(A) of the Agreement.

The Agreement was terminated by Morehouse General effective July 1, 2009. Notice of the termination was given by Morehouse General to ESS pursuant to a letter dated March 17, 1999. ESS asserts that Morehouse General has breached Section 10(A) of the Agreement by failing to wait the twelve (12) month waiting period prior to "soliciting and/or retaining" the four above-referenced Emergency Physicians and seeks to be paid $50,000 per physician retained and/or solicited by Morehouse General within the twelve (12) months following the termination of the Agreement.

Morehouse General asserts that Section 10(A) of the Agreement, which is sought to be enforced by ESS, is against public policy and is null and void pursuant to La. R.S. 23:921. Thus, since Section 10(A) of the Agreement is null and void pursuant to statute, Morehouse General is

not required to abide by that Section and ultimately is not liable to ESS for the damages asserted. Morehouse General is entitled to a judgment of dismissal as a matter of law.

**II.     UNDISPUTED FACTS:**

The undisputed facts applicable to Morehouse General's Motion, are:

1. On July 1, 2007, ESS and Morehouse General entered into a "Hospitalist and Emergency Department Services Agreement. (Complaint at Paragraph 6) (Also see Exhibit B).

2. Pursuant to the Agreement, ESS would arrange for Emergency Physician coverage for the Morehouse General emergency department and for Hospitalist Physician coverage. (Exhibit A at Section 3(A) and (B)).

3. Morehouse General, by letter dated March 17, 2009 directed to ESS' Chief Executive Officer, Ron Weiss, terminated the Agreement effective July 1, 2009. (Complaint at Paragraph 8).

4. The Agreement, in Section 10(A) provides:

   > 10.    Restrictive Covenant.
   >
   > A. In recognition that ESS expends substantial resources and efforts to make qualified physicians available to serve as Providers, Hospital agrees that, during the Term of this Agreement including any extensions thereof, and for a period of 12 months after the termination or expiration of this Agreement regardless of cause, Hospital will not directly or indirectly (including, without limitation, through a controlled affiliate) solicit, retain, employ, contract with or otherwise engage or be the beneficiary of the professional services of any Provider who (a) was presented to Hospital by ESS as a prospective Provider within a six month period prior to date of termination or expiration of this Agreement, or (b) provided either administrative or medical services to satisfy ESS' obligations under this Agreement at Hospital. In addition, Hospital agrees that it will not induce, persuade, or attempt to persuade any Emergency Physician or prospective Emergency Physician to refuse to provide services or terminate his or her relationship with ESS, its agents or affiliates. Any current physicians working in the Hospital do not apply to this Restrictive Covenant. Notwithstanding the provisions of Section 10(A), ESS may, in its sole discretion, elect to waive the provisions of Section 10(A) for any

|   |   |
|---|---|
|   | Emergency Physician subject to such provision; provided however, that ESS shall be compensated for each such Emergency Physician in the amount of Fifty Thousand Dollars ($50,000). |
|   | (Exhibit A). |
| 5. | The subject agreement further provides in Section 17 that Louisiana law applies regarding the validity, construction, enforcement and interpretation of the agreement. (Exhibit A). |
| 6. | La. R.S. 23:921(A)(1) provides that "[e]very contract or **agreement**, or provision thereof, by which **anyone is restrained from exercising a lawful profession, trade, or business of any kind**, except as provided in this Section, **shall be null and void**." (Emphasis added). |

## III.  LAW AND ARGUMENT:

### A.  Summary Judgment Standard

Federal Rules of Civil Procedure, Art. 56(C) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." A fact is material if it may affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 248, 106 S. Ct. 2505, 91 L. Ed. 2nd 202 (1986). An issue is genuine if there is sufficient evidence so that a reasonable jury could return a verdict for either party. *Id.* The court must "review the facts drawing all references most favorable to the party opposing the motion." *Reid v. State Farm Mutual Auto Insurance Co.*, 784 F.2nd 577, 578 (5th Cir. 1986).

The moving party bears the initial responsibility of informing the court of the basis for its motion, and identifying those parts of the record that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrell*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2nd 265 (1986); *Lawrence v. University of Texas medical Branch at Galveston*, 163 F.3d

7

309 (5th Cir. 1999). The moving party need not produce evidence to negate the elements of the non-moving party's case. *Celotex Corp., supra* at 325; *Lawrence, supra* at 311.

Once the moving party carries its initial burden, the burden then falls upon the non-moving party to demonstrate the existence of a genuine issue of material fact. *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106. The non-movant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence. *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (quoting *Celotex,* 477 U.S. at 323-25, 106 S.Ct. at 2552).

**B.    LSA-R.S. 23:921**

LSA-R.S. 23:921 provides, in pertinent part, as follows:

> A.    (1) Every contract or agreement, or provision thereof, by which anyone is restrained from exercising a lawful profession, trade, or business of any kind, except as provided in this Section shall be null and void.
>
> . . .
>
> C.    Any person, including a corporation and the individual shareholders of such corporation, who is employed as an agent, servant, or employee may agree with his employer to refrain from carrying on or engaging in a business similar to that of the employer and/or from soliciting customers of the employer within a specified parish or parishes, municipality or municipalities, or parts thereof, so long as the employer carries on a like business therein, not to exceed a period of two years from termination of employment. An independent contractor, whose work is performed pursuant to a written contract, may enter into an agreement to refrain from carrying on or engaging in a business similar to the business of the person with whom the independent contractor has contracted, on the same basis as if the independent contractor were an employee, for a period not to exceed two years from the date of the last work performed under the written contract.
>
> . . .

The parties to the Agreement agree in Section 17 of the subject agreement that Louisiana law applies and governs the validity, construction, enforcement and interpretation of the agreement. (Exhibit A). Louisiana has consistently had a strong public policy against

8

noncompetition contracts. *Turner Professional Services, Ltd., supra, citing* ***Orkin Exterminating Co. v. Foti,*** 302 So.2d 593, 596 (La. 1974); ***Cellular One, Inc. v. Boyd,*** 653 So.2d 30, 32 (La. App. 1st cir. 3/3/95), *writ denied,* 660 So.2d 449 (La. 9/15/95). Before 1989, LSA-R.S. 23:921 provided that those agreements were null and unenforceable unless the employer had incurred significant expense in training the employee or advertising the business. In 1989, the legislature amended the statute to permit agreements prohibiting competition for up to two years "within a specified parish or parishes, municipality or municipalities, or parts thereof, so long as the employer carries on a like business therein." *Id. citing Acts 1989, No. 639 § 1.* The amendment to LSA-R.S. 23:921 by 1989 La. Acts, No. 639, § 1 changed the law from a prohibition against agreements between employers and employees for the employee "not to engage in any competing business" to a prohibition against all "contract[s] or agreement[s]...by which anyone is restrained from exercising a lawful profession, trade, or business. ***CDI Corp. v. Hough,*** 9 So.3d 282 (La. App. 1 Cir. 3/27/09). The strong public policy against noncompetition agreements is still reflected in subsection (A)(1), which reads, "Every contract or agreement, or provision thereof, by which anyone is restrained from exercising a lawful profession, trade, or business of any kind, except as provided in this Section, shall be null and void." *Id.* The desire to prevent an individual from contractually depriving himself of the ability to earn a living and consequently becoming a public burden is the basis for Louisiana's strong public policy restricting noncompetition agreements. ***Action Revenue Recovery, LLC v. EBusiness Group, LLC,*** 17 So.3d 999 (La. App. 2 Cir. 8/19/09).

Public policy requires that the provisions of noncompetition agreements be strictly construed in favor of the employee, and the agreements must strictly comply with the requirements of the statute limiting the territorial scope of such contracts. ***Turner Professional***

9

*Services, Ltd. v. Broussard,* 762 So.2d 184 (La. App. 1 Cir. 5/12/00). Louisiana's approach to non-competition agreements requires mechanical adherence to the requirements listed in the law, particularly the geographical and time limitations. *L&B Transport, LLC, supra.*

La. R.S. 23:921 enumerates certain exceptions which, if applicable, would allow a restrictive covenant. However, none of the exceptions are applicable to the subject Agreement. The only one, which could possibly be applicable is La. R.S. 23:921(C), as stated above. Under Louisiana law, a contract trying to fit into an exception to the general rule against non-competition agreements must strictly comply with statutory requirements. *L&B Transport, LLC v. Beech,* 568 F.Supp.2d 689 (M.D. La. 2008). Both the exception set forth in La. R.S. 23:921(C) and the noncompetition agreement must be strictly construed. *Action Revenue Recovery, LLC, supra.* If either the action sought to be enjoined pursuant to a noncompetition agreement does not fall within the statutory exception set forth in La. R.S. 23:921(C), or the noncompetition agreement is unenforceable due to its failure to conform to the statutory requirements, then the employer cannot establish entitlement to the relief sought. *Id., citing Vartech Systems, Inc. v. Hayden,* 951 So.2d 247 (La. App. 1st Cir. 12/20/06).

With these principles in mind, we turn to the noncompetition agreement at issue. The disputed provision included within the agreement between ESS and Morehouse General is an agreement by Morehouse General that it will not hire physicians contracted with ESS to provide emergency room and/or hospitalist services during the terms of the agreement and for a period of twelve (12) months after termination of the agreement. The subject agreement is certainly an "agreement" as indicated by its title; and it clearly restrains "Physicians", as well as Morehouse General from "exercising a lawful profession, trade, or business of any kind," and, thus the provision is "null and void" pursuant to LSA-R.S. 23:921(A)(1).

Further, the agreement at issue does not fall into the purview of LSA-R.S. 23:921(C) for several reasons. First, 23:921(C) requires an employer/employee relationship in order for the section to be applicable. No such employer/employee relationship exists, nor ever existed between Morehouse General and ESS. Second, 23:291(C) requires a geographical limitation, which the subject agreement does not contain. The language of Section 10(A) does not specify the "parish or parishes, municipality or municipalities" as required by LSA-R.S. 23:921. The absence of the required geographical limitation is fatal to a noncompetition agreement and renders it invalid. *Action Revenue Recovery, LLC.*, supra. citing *Sentilles Optical Services, Division of Senasco v. Phillips,* 651 So.2d 395 (La. App. 2d Cir. 3/11/95). Third, LSA-R.S. 23:921(C) requires that the employer carry on a "like business" within the area. ESS is not carrying on like business in the area and has not since its contract with Morehouse General was terminated. Thus, the subject agreement is unenforceable for failure to conform to LSA-R.S. 23:921(C).

Additionally and in the alternative, Morehouse General asserts that upon the termination of the contract with ESS, Morehouse General contracted with another group for the provision of emergency medicine physicians to staff its Emergency Department. The affidavit of Cheryl Faulkenberry, CEO/Administrator of Morehouse General is attached hereto as Exhibit B. In her affidavit, Mrs. Faulkenberry attests that following the termination of Morehouse General's agreement with ESS, Morehouse General contracted with another company, The Schumacher Group to staff the Emergency Department, effective July 1, 2009 and from that date forward, the Schumacher Group provided physicians to staff the Morehouse General Emergency Department. (Exhibit B). Morehouse General has not solicited nor contracted with any of the physicians named in plaintiff's complaint, some of whom may have become independent contractors of the

group who took over after termination with ESS. (Exhibit B). An "Emergency Department Agreement" was entered between Morehouse Emergency Group and Morehouse General and became effective July 1, 2009, the same date Morehouse General's agreement with ESS terminated. (Exhibit B).

## IV. CONCLUSION

Applying the statutory law and jurisprudence of the state of Louisiana to the facts of this case, there remains no genuine issue of material fact as to whether or not the non-compete provision of the subject agreement between ESS and Morehouse General is overly broad and unenforceable as a matter of law. Thus, all claims against Morehouse General should be dismissed as a matter of law.

**Respectfully submitted,**

**NELSON, ZENTNER, SARTOR & SNELLINGS, LLC**
**1507 Royal Avenue**
**Post Office Box 14420**
**Monroe, Louisiana 71207-4420**
**Telephone: (318) 388-4454**
BY:   /s/ David H. Nelson
      DAVID H. NELSON
      LA. BAR ROLL NO. 9926
      ATTORNEYS FOR DEFENDANT, MOREHOUSE
      PARISH HOSPITAL SERVICE DISTRICT NO. 1
      d/b/a MOREHOUSE GENERAL HOSPITAL

### CERTIFICATE

I hereby certify that on November 23, 2010, a copy of the foregoing Memorandum in Support of Motion for Summary Judgment was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to Russell L. Foster and Harry M. Barton by operation of the court's electronic filing system.

**/s/ David H. Nelson**
**OF COUNSEL**