# IN THE UNITED STATES DISTRICT COURT

## FOR THE WESTERN DISTRICT OF LOUISIANA

### MONROE DIVISION

| | | |
|---|---|---|
| **EMERGENCY STAFFING SOLUTIONS, INC.** | * | **CIVIL ACTION NO. 10-00157** |
| **VERSUS** | * | **JUDGE ROBERT G. JAMES** |
| **MOREHOUSE PARISH HOSPITAL SERVICE DISTRICT NO. 1 d/b/a MOREHOUSE GENERAL HOSPITAL** | * | **MAG. JUDGE KAREN L. HAYES** |

## MEMORANDUM RULING

Before the undersigned Magistrate Judge are dueling motions for summary judgment. Doc. # 10, doc. # 11. For reasons stated below, Emergency Staffing Solutions, Inc.'s motion is **GRANTED**, and Morehouse Parish Hospital Service District No. 1 d/b/a Morehouse General Hospital's motion is **DENIED**.

## BACKGROUND

Plaintiff Emergency Staffing Solutions ("ESS") is a hospital staffing services company which provides various administrative services to hospitals, including arranging for emergency physician coverage and hospitalist physician coverage to hospitals. Compl., Feb. 4, 2010, ¶ 5 [Doc. # 1]. Plaintiff's complaint alleges breach of contract against defendant, Morehouse Parish Hospital Service District No. 1 d/b/a Morehouse General Hospital ("Morehouse General"). *See* Doc. # 1.

On July 1, 2007, ESS entered into a Hospitalist and Emergency Department Services Agreement ("Agreement") with Morehouse General. Doc. # 1, ¶ 6. Pursuant to the Agreement, ESS identified and provided qualified physicians to staff Morehouse General's emergency medicine department. Mem. in Suppo. of Pl.'s Mot. for Summ. J., Doc. # 11-1, p. 1.

Included in the Agreement is the following clause, entitled "Restrictive Covenant":

    A.    In recognition that ESS expends substantial resources and efforts to make qualified physicians available to serve as Providers, Hospital agrees that, during the Term of this Agreement including any extensions thereof, and for a period of 12 months after the termination or expiration of this Agreement regardless of cause, Hospital will not directly or indirectly (including, without limitation, through a controlled affiliate) solicit, retain, employ, contract with or otherwise engage or be the beneficiary of the professional services of any Provider who (a) was presented to Hospital by ESS as a prospective Provider within a six month period prior to date of termination or expiration of this Agreement, or (b) provided either administrative or medical services to satisfy ESS' obligations under this Agreement at Hospital.  In addition, Hospital agrees that it will not induce, persuade, or attempt to persuade any Emergency Physician or prospective Emergency Physician to refuse to provide services or terminate his or her relationship with ESS, its agents or affiliates.  Any current physicians working in the Hospital do not apply to this Restrictive Covenant.  Notwithstanding the provisions of Section 10(A), ESS may, in its sole discretion, elect to waive the provisions of Section 10(A) for any Emergency Physician subject to such provision; provided however, that ESS shall be compensated for each such Emergency Physician in the amount of Fifty Thousand Dollars ($50,000).

Agreement, Compl. Ex. 1 [Doc. # 1-1], § 10(A).

Pursuant to Section 1 of the Agreement, Morehouse General terminated the Agreement with ESS via written letter on March 17, 2009.  Mem. in Supp. of Pl.'s Mot. for Summ. J., Ex. A-2 [Doc. # 11-4].  Thereafter, ESS alleges, Morehouse General breached Section 10(A) of the Agreement by failing to wait the twelve (12) month waiting period prior to "soliciting and/or retaining" four Emergency Physicians provided by ESS.[1]  Compl., Doc. # 1, ¶ 9.  ESS seeks to be

---

[1] In the Complaint, plaintiff alleges that Morehouse General, "without waiting the 12-month period described in Section 10(A) of the Agreement, solicited and/or retained **at least the four individuals** identified in...paragraph 7..."  Doc. # 1, ¶ 9 (emphasis added).  The four Emergency Physicians provided by ESS to Morehouse General were Lorris Metzler, Patrick Grayson, Dale R. Maddox, and Gbolahan Sokoya.  *Id.* at ¶ 7.  However, in its motion for summary judgment, ESS asserts only that Drs. Metzler, Grayson, and Sokoya "continued to work at the hospital" after the Agreement was terminated on July 1, 2009.  Doc. # 11-1, p. 3.  Additionally, ESS demands that Morehouse General "be ordered to pay ESS the contractually agreed upon amount of $150,000," or $50,000 for each doctor allegedly retained by defendant (Drs. Metzler, Grayson, and Sokoya).  *Id.* at p. 11.  Therefore, the court assumes that any alleged "solicitation and/or retainment" of Dr. Dale R. Maddox by Morehouse General is not at

paid $50,000 per physician retained and/or solicited by Morehouse General within the twelve

(12) months following the termination of the Agreement.  *Id.*, Prayer, ¶ 2.

In requesting summary  judgment, defendant Morehouse General asserts that Section

10(A) of the Agreement, labeled "Restrictive Covenant" and sought herein to be enforced by

ESS, is a covenant not co compete against public policy, and is null and void pursuant to La. R.S.

23:291.  Def.'s Mem. in Supp. of Mot. for Summ. J., Doc. # 10-1.  Therefore, defendant argues,

Morehouse General is not required to abide by Section 10(A), and is not liable to ESS for the

damages asserted.  *Id.*

In plaintiff's motion for summary judgment, ESS contends that Section 10(A) is not a

covenant not to compete at all and is therefore not governed by La. R.S. 23:291.  Mem. in Supp.

of Pl.'s Mot. for Summ. J., Doc. # 11-1, p. 2.  ESS further argues that the Agreement is simply a

staffing services contract providing for the compensation of the staffing services company, ESS,

in the event that Morehouse General continued to utilize the physicians' services after

terminating the Agreement.  *Id.*  As such, ESS concludes, the Agreement should be enforced and

Morehouse General should be required to pay the agreed upon amount to ESS.  *Id.*

## LAW AND ANALYSIS

### I.      Motion for Summary Judgment Standard

Summary judgment is appropriate when the evidence before the Court shows that no genuine

issue as to any material fact exists and that the moving party is entitled to judgment as a matter of

law.  F.R.C.P. Rule 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  An issue is "genuine"

under this standard if the non-moving party has presented sufficient evidence such that a reasonable

jury could return a verdict in his favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

issue in this litigation.

The moving party bears the initial burden in summary judgment and must demonstrate through portions of the pleadings, depositions, answers to interrogatories, admissions and/or affidavits that no genuine issue of material fact exists.  *Celotex Corp.*, 477 U.S. at 323.  Once the moving party has successfully demonstrated the absence of a genuine issue of material fact, the burden shifts to the non-moving party to show the opposite.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  In doing so, the non-moving party may not merely rely on the allegations and conclusions contained within the pleadings; rather, he "must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial." *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996).  Furthermore, these specific facts must be shown through something more than "some metaphysical doubt as to the material facts, by conclusory unsubstantiated allegations, or by a mere scintilla of evidence."  *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

## II.     Enforceability of Section 10(A), "Restrictive Covenant"

Under Louisiana law,[2] if a contract's terms are clear, "the court will enforce the contract as written, provided the agreement is not contrary to good morals or public policy."  *CDI Corporation v. Hough*, 2008-0218 (La.App. 1 Cir. 3/27/09), 9 So.3d 282, 287 (citing *First Nat. Bank of Commerce v. City of New Orleans*, 555 So.2d 1345, 1348 (La. 1990)).  Parties are free to contract for any lawful, possible, and determinable objective.  La. Civ.Code art. 1971.  Such "freedom to contract" illustrates that parties to an agreement "have the right and power to construct their own bargains."  *CDI Corporation*, 9 So.3d at 287 (citing *Louisiana Smoked Products, Inc. v. Savoie's Sausage and Food Products, Inc.*, 96-1716 (La. 7/1/97), 696 So.2d 1373, 1380).  However, if a

---

[2] The Agreement between ESS and Morehouse General provides that Louisiana law applies regarding the validity, construction, enforcement and interpretation of the Agreement.  Compl., Ex. A [Doc. # 1-1, § 17].

proposed bargain is found to be contrary to public policy, the state may legitimately restrict the parties' right to contract. *Louisiana Smoked Products*, 696 So.2d at 1381. "Therefore, in a free enterprise system, parties are free to contract except for those instances where the government places restrictions of public policy." *CDI Corporation*, 9 So.3d at 288 (citing *Louisiana Smoked Products*, 696 So.2d at 1381).

Here, Morehouse General contends that the Agreement in question is one of those "instances." Specifically, defendant contends that Section 10(A) of the Agreement is an invalid covenant not to compete and is unenforceable on grounds of public policy. Doc. # 10-1, p. 5.

In Louisiana, covenants not to compete, and other similar restraints on robust competition, are generally disfavored, and, historically, courts have strictly construed such agreements. *Louisiana Smoked Products, Inc. v. Savoie's Sausage and Food Products, Inc.*, 96-1716 (La. 7/1/97), 696 So.2d 1373, 1380. Accordingly, "every contract or agreement, or provision thereof, by which anyone is restrained from exercising a lawful profession, trade, or business of any kind, except as provided in this Section, shall be null and void." La. Rev. Stat. Ann. § 23:921(A)(1) (2005).

In support of its argument that Section 10(A) is invalid on public policy grounds, Morehouse General argues that Section 10(A) "clearly restrains 'physicians,' as well as Morehouse General from 'exercising a lawful profession, trade, or business of any kind,'" making the provision null and void pursuant to La. R.S. 23:921(A)(1). Doc. # 10-1, p. 10. Morehouse General expounds on this claim in its reply to plaintiff's opposition to defendant's motion for summary judgment, again asserting that it is "[w]ithout question, [that] the physicians who previously contracted with ESS prior to Morehouse General's termination of the Agreement were restrained...from working at Morehouse General following the termination of the Agreement." Doc. # 22, p. 3. However, the evidence submitted illustrates that Drs. Lorrie Metzler, Patrick Grayson, and Gbolahan Sokoya continued to

work at Morehouse General after the Agreement was terminated, and worked "for at least some portion of the following time frame: July 1, 2009 through July 1, 2010." Def.'s Resp. to Pl.'s First Set of Req. for Admis., Nos. 7-8, 10, Ex. B to Pl.'s Mot. for Summ. J. [Doc. # 11-6]. The doctors, therefore, have not been "restrained" in any way, as defendant admits that the doctors continued to work at Morehouse General following the termination of the Agreement.[3] *Id.*

Further, and more importantly, the undersigned is not convinced that Section 10(A) is the type of agreement that is subject to Louisiana Revised Statutes 23:921(A)(1) at all. Section 10(A) does not prevent Morehouse General from exercising its trade, profession, or business; indeed, defendant offers no allegations that it has not been able to engage in full operations as a result of entering into the Agreement. Decl. of Shonda Rupe, Ex. A to Pl.'s Mot. for Summ. J. [Doc. # 11-2 at ¶ 12]. Rather, Section 10(A) merely restricts those medical service providers that defendant can "solicit, retain, employ, contract with or otherwise engage or be the beneficiary of the professional services of..." Agreement, Doc. # 1-1, § 10(A). Additionally, there is no evidence that plaintiff and defendant are business competitors, as plaintiff is a staffing services company that provided medical care providers to defendant, a hospital.

Accordingly, the language of Section 10(A) does not evidence a covenant not to compete, but rather is indicative of a "non-solicitation of employees clause." Various Louisiana courts have held that non-solicitation of employees clauses are not prohibited by Louisiana's non-compete statute, La. R.S. 23:291. *See CDI Corp. v. Hough*, 2008-0218 (La.App. 1 Cir. 3/27/09) 9 So.3d 282; *Smith, Barney, Harris Upham & Co., Inc. v. Robinson*, 12 F.3d 515 (5th Cir. 1994) (per curiam); *Johnson Controls, Inc. v. Guidry*, 2010 WL 2773234, *10 (W.D. La. 7/12/10), 724 F.Supp.2d 612.

---

[3] To the extent that Morehouse General attempts to argue that the physicians themselves - Drs. Lorrie Metzler, Patrick Grayson, and Gbolahan Sokoya - have been restrained from "exercising a lawful profession, trade, or business of any kind," the court notes that the doctors are not a party to this litigation.

*See also, John Jay Esthetic Salon, Inc. v. Woods*, 377 So.2d 1363 (La.App. 4 Cir. 1979), *writ denied*, 395 So.2d 1363 (La. 1981) ("[a]n agreement not to engage in competition with the employer is vastly different from an agreement not to solicit the employer's customers or employees or to engage in a business relationship with the employees or contractors," 377 So.2d at 1366); *Emergency Physicians Ass'n v. Our Lady of the Lake Regional Medical Center*, 92-2090 (La.App. 1 Cir. 2/11/94), 635 So.2d 1148, *writ granted and judgment vacated in part on other grounds*, 94-1268 (La. 9-16-94), 642 So.2d 179.[4]

In *CDI Corp.*, the defendant, Hough, entered into an employment agreement which included a non-solicitation of employees clause. *CDI Corp.*, 9 So.3d at 284. Despite the clause, Hough solicited and hired away CDI employees in contravention of the agreement. *Id.* at 285. After the defendant sought to avoid the agreement's enforcement on the basis of La. R.S. 23:921, Louisiana's First Circuit found the statute inapplicable to non-solicitation of employees clauses. *Id.* at 292. The court noted that the Federal Fifth Circuit, using the current version of 23:921, had already found non-solicitation of employees clauses to be enforceable, because they "simply do not meet the definition of the kinds of contracts covered by [La. R.S. 23:291]." *Smith, Barney*, 12 F.3d at 519.

---

[4] Both *John Jay* and *Emergency Physicians* found that non-solicitation of employees clauses were not prohibited by Louisiana's non-compete statute, as noted by the court in *CDI Corp.* However, in *CDI Corp.*, the court was clear that its holding did not rest on either *John Jay* or *Emergency Physicians*, as the two cases addressed an earlier version of La. R.S. 23:291. Nevertheless, the *CDI Corp.* court found *John Jay* and *Emergency Physicians* to be instructive; 9 So.3d at 290.

*Emergency Physicians* is of particular relevance to the instant case, as it involved a promise by Our Lady of the Lake Hospital not to solicit the individual physician partners ("EPA") of the partnership with whom the hospital contracted to provide emergency room medical services. Citing *John Jay*, Louisiana's First Circuit found that such agreements were valid and not prohibited by La. R.S. 23:291. *Emergency Physicians*, 635 So.2d at 1150. In so holding, the court noted that the hospital could continue fulfilling its duty to the citizens of Baton Rouge to provide emergency medical services and that the hospital was free to solicit or contract with any physician or group of physicians except for the partners of EPA. *Id.* This is similar to the restriction in the instant case: Morehouse General is certainly not prohibited from soliciting or contracting with any other physicians in Morehouse Parish and surrounding areas. Further, Morehouse General is free to continue to benefit from the work of Drs. Metzler, Grayson, and Sokoya, so long as it pays ESS the compensation owed under the terms of the Agreement.

In *Smith, Barney*, the Fifth Circuit concluded that in order for a non-solicitation of employee clause to violate La. R.S. 23:921, the clause would have to prohibit the party from soliciting or recruiting **everyone**, not just current or former employees of the opposing party.  *Id.*  The court further noted that La. R.S. 23:921(C), an exception to the non-competition statute, allows parties to contract to prohibit an employee from engaging in similar business and from soliciting customers, but is silent as to soliciting former employees.  *Id.*  The court reasoned that the omission was "an implicit legislative recognition that, without more, a narrowly tailored covenant not to solicit employees of the employer is not among the kinds of agreements covered by the statute."  *Id.*  The Fifth Circuit therefore held the non-solicitation of employees clause to be enforceable, and plaintiff's requested injunctive relief appropriate.  *Id.*

As in *CDI Corp.* and *Smith, Barney*, Section 10(A) of the subject Agreement is narrowly tailored and reasonable in scope.  Section 10(A) limits Morehouse General's ability to retain or continue to benefit from the services of a small number of physicians - those who were placed with the defendant hospital by ESS - and for a limited amount of time, twelve months.  As the parties herein are not competitors, ESS does not seek injunctive relief to prevent Morehouse General from benefitting from the services of the physicians in question; rather, ESS seeks to obtain the compensation defendant agreed to pay in the event it did retained the physicians upon termination of the Agreement.[5]  Accordingly, the undersigned finds that Section 10(A) of the Agreement is not

---

[5] Morehouse General puts forth the argument that it has neither "solicited nor contracted with any of the physicians named in plaintiff's complaint, some of whom may have become independent contractors of the group who took over after termination with ESS."  Doc. # 10-1, pp. 10-11.  However, Section 10(A) of the Agreement concerns not only the solicitation, but also the retainment of any providers that ESS presented to Morehouse General during the relevant period:

"...Hospital will not directly or indirectly...**solicit**, **retain**, **employ**, **contract with** or otherwise engage or be the beneficiary of the professional services of any Provider who(a) was presented to Hospital by ESS as a prospective Provider within a six month period prior to date of termination or expiration of this Agreement, or (b) provided either administrative or medical services to satisfy ESS' obligation under this Agreement at Hospital."

governed by La. R.S. 23:921, and is enforceable as written.

Defendant correctly notes that another court in this District recently held that "[v]alid non-solicitation clauses are therefore the exception, rather than the rule." *Ferrellgas, L.P. v. McConathy*, 2010 WL 1010831, *3 (3/15/10 W.D. La.).  However, this recent case concerned solicitation of a business's **customers**, not of a business's employees.  *Id.*  While discussing the application of an exception to the non-competition statute, La. R.S. 23:921(C), the court noted that

> [A] non-solicitation clause must comport with the requirements of the governing Louisiana statute to be enforceable.  In general, a non-competition provision must be strictly limited to designated parishes and contain a maximum term of two years. *See* La. R.S. 23:921(C).  The statute provides, in relevant part, that an employee "may agree with his employer to refrain from carrying on or engaging in a business similar to that of the employer and/or from **soliciting customers** of the employer within a specified parish or parishes, municipality or municipalities, or parts thereof.  *Id.* While non-solicitation clauses are theoretically distinct from non-competition clauses, they must still independently satisfy the requirements of La. R.S. 23:291(C). *Vartech Sys., Inc. v. Hayden*, 260-61 (La.App. 1st Cir. 2006), 951 So.2d 247.

*Id.*

In the present case, even if Section 10(A) of the Agreement were governed by La. R.S. 23:921 - which it is not for the reasons described *supra* - it would "comport with the requirements" of 23:921(C).  Section 10(A) is for a period of less than two years; additionally, the location is described with sufficient specificity (limited to a single hospital within a single municipality) such that it meets the "or parts thereof" requirement for geographical specificity .  La. R.S. 23:921(C).

Finally, Morehouse General argues, in a generalized manner, that if Section 10(A) of the Agreement is upheld, "it would have a deleterious effect on Morehouse General, as well as the residents of Morehouse Parish and the surrounding rural areas."  Doc. # 22, p. 10.  Morehouse

---

Agreement, Doc. # 1-1, § 10(A) (emphasis added).

Therefore, it was not necessary for defendant to actively solicit the providers in question; the fact that the providers continued working at Morehouse General after the hospital terminated the Agreement is violative of Section 10(A).

General provides the Affidavit of Cheryl Faulkenberry, BSN, R.N., who attests that

> Any restriction on the ability of any company to provide emergency medical physicians, which are in short supply, to staff the Emergency Department at [Morehouse General] would be a hardship and burden on [Morehouse General] and could lead to the inability of [Morehouse General] to maintain an Emergency Department.

Affidavit of Cheryl Faulkenberry, Def.'s Mem. in Opp. to Pl.'s Mot. for Summ. J., Ex. 1 [Doc. # 14-1, p. 2.]

However, Morehouse General does not expound on exactly how anyone in Morehouse Parish would be affected by defendant paying the contractually agreed-upon sum to ESS.  Nor does Morehouse Parish, or, in her affidavit, Ms. Faulkenberry, explain how the defendant's payment to ESS would "restrict" defendant's ability to operate its Emergency Department, or would further exacerbate the "short supply" of physicians.  Defendant offers no evidence that the Emergency Department at Morehouse General is unable to provide adequate care to the residents of Morehouse Parish; further, defendant does not explain how abiding by the Agreement would suddenly cause the Emergency Department to suffer in its ability to serve Morehouse Parish.  Moreover, Defendant cites to no law that would allow a hospital (or anyone else) to breach a valid contract on the sole basis that living up to the terms of same would cause it a financial hardship.  Therefore, defendant has not brought forth any reason why the subject Agreement, and Section 10(A) in particular, should not be enforced as written.

## CONCLUSION

For the above assigned reasons,

**IT IS ORDERED** that plaintiff, Emergency Staffing Solutions, Inc.'s motion for summary judgment [doc. # 11] be **GRANTED**; it is further **ORDERED** that defendant, Morehouse Parish Hospital Service District No. 1 d/b/a Morehouse General Hospital's motion for summary judgment [doc. # 10] be **DENIED**.

THUS DONE AND SIGNED at Monroe, Louisiana, this 18th day of January, 2011.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE